IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**SHANNON E. QUIGLEY,**

      Plaintiff,

vs.                                                  Civ. No. 02-694 ACT

**JO ANNE B. BARNHART,**
**Commissioner of Social Security,**

      Defendant.

**MEMORANDUM OPINION AND ORDER**

      **THIS MATTER** comes before the Court upon Plaintiff's Motion to Reverse or Remand the Administrative Agency Procedure filed March 7, 2003. Docket No.10. The Commissioner of Social Security issued a final decision denying benefits finding that Plaintiff was not disabled. Having considered the Motion, the memoranda submitted by the parties, the administrative record and the applicable law, the Court finds that the motion is well taken in part.

**I.  PROCEDURAL RECORD**

      Plaintiff, Shannon E. Quigley, filed applications for disability insurance and supplemental security income benefits on May 19, 1999 alleging a disability since February 10, 1999, due to an IGA deficiency, migraines, fibrositis, depression, asthma, arthritis, lupus, and chronic fatigue. Tr. 51, 73 and 392.  Her application was denied at the initial and reconsideration level.

      The ALJ conducted a hearing on June 16, 2000.  At the hearing, the Plaintiff was represented by an attorney.  On August 11, 2000, the ALJ made the following conclusions according to the sequential analysis set forth in 20 C.F.R. § 404.1520(a)-(f) and Thompson v. Sullivan, 987 F.2d 1482,

1

1487 (10th Cir. 1993):  the claimant has not engaged in post-onset substantial gainful activity; the claimant has a combination of impairments considered "severe;" the claimant's impairments do not meet or equal a listed impairment; the claimant's allegations regarding her limitations are not totally credible; the claimant has a residual functional capacity for a restricted range of unskilled, "light" work; the claimant is not able to perform her past relevant work; vocational expert testimony supports a finding that other work exists in significant numbers in the regional and national economies that the Plaintiff is capable of performing; and, the claimant is not under a "disability," as defined in the Social Security Act, at any time through the date of the decision.  Tr. 12-19.

The ALJ entered his decision on August 11, 2000.  Thereafter, the Plaintiff filed a request for review.  On April 12, 2002, the Appeals Council issued its decision denying Plaintiff's request for review and upholding the final decision of the ALJ.  Tr. 5.  The Plaintiff subsequently filed her Complaint for court review of the ALJ's decision on June 14, 2003.

## II.  STANDARD OF REVIEW

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether she applied correct legal standards.  See Hamilton v. Secretary of Health and Human Services, 961 F.2d 1495, 1497-98 (10th Cir. 1992).  Evidence is substantial if "a reasonable mind might accept [it] as adequate to support a conclusion."  Andrade v. Secretary of Health and Human Svcs., 985 F.2d 1045, 1047 (10th Cir. 1993)(quoting Broadbent v. Harris, 698 F.2d 407, 414 (10th Cir. 1983)(citation omitted)).  A decision of an ALJ is not supported by substantial evidence if other evidence in the record overwhelms the evidence supporting the decision.  See Gossett v. Bowen, 862 F.2d 802, 805 (10th Cir. 1988).

In order to qualify for disability insurance benefits, a clamant must establish a severe physical

or mental impairment expected to result in death or last for a continuous period of twelve months, which prevents the claimant from engaging in substantial gainful activity.  See 42 U.S.C. §423(d)(1)(A); see also Thompson, 987 F.2d at 1486.  The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications.  20 C.F.R. § 404.1520(a-f).  The sequential evaluation process ends if, at any step, the Commissioner finds the claimant is not disabled.  See Thompson, 987 F.2d at 1487.

At the first four levels of the sequential evaluation process, the claimant must show she is not engaged in substantial gainful employment, she has an impairment or combination of impairments severe enough to limit her ability to do basic work activities, her impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1, or she is unable to perform work she had done in the past.  20 C.F.R. §§ 404.1520 and 416.920.  At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering her residual functional capacity, age, education, and prior work experience. Id.

### III.  MEDICAL HISTORY

On the date of the ALJ's decision, Plaintiff was 48 years old.  Tr. 13, 51.  She has a college education with a Bachelor of Science degree and a teaching certificate.  Tr. 79.  Plaintiff has past relevant work experience as a teacher, sales clerk, secretary and receptionist.  Tr. 74.

Dr. Trudy E. Termini treated the Plaintiff from December 21, 1987 to November 15, 1999. Plaintiff was initially diagnosed with mild connective tissue disease and fibrositis.  Tr. 304 In 1995, Dr. Termini found that Plaintiff had 18 out of 18 tender points and found that Plaintiff's "[f]ibromyalgia remains active." Tr. 275.   It appears from the records of Dr. Temini that Plaintiff

has been on antidepressants since at least 1986. Tr. 298.

More recently, On August 4, 1998, Dr. Termini noted that Plaintiff had the following problems: mild connective tissue disease, fibromyalgia, migraines, right shoulder pain, and depression. She found at that time that Plaintiff's depression was a "little bit better" and she was noting "no significant symptoms of her connective tissue disease." However, Dr. Termini found that Plaintiff "still [had] 18/18 fibromyalgia trigger points" and that the fibromyalgia "remains active." Tr. 165. In November of 1998, Dr. Termini found that Plaintiff's fibromyalgia "remains active" and Plaintiff "[c]ontinues to be depressed, part of which may be situational." Tr. 161. In February of 1999, Dr. Termini found that Plaintiff's fibromyalgia was an "ongoing but relatively stable problem," and that Plaintiff's depression was "o[nly a minor issue right now." Tr. 156.

Dr. Cathal P. Grant, of Bedford, Texas treated the Plaintiff from August 6, 1997 to 1999. He performed a psychiatric evaluation on August 6, 1997. At that time the Plaintiff complained of "lethargy, hypersomnia and amotivation with excessive checking behavior." Tr. 148. He noted a "positive" family history.

> "Positive for depression, obsessive compulsive disorder in her mother and sisters. Depression and suicidality in the males of her family and two brothers have substance abuse." Tr. 148.

He diagnosed her with major depression, recurrent and "OC Traits" and prescribed Prozac, 20mg. Tr. 149. Dr. Grant increased her Prozac to 40 mg and then to 60mg. Tr. 146. In November of 1998, he considered her "stable." Id.

Plaintiff was treated by Dr. James F. Leffingwell from February 23, 1998 to May 13, 1999. He treated her for her sinus infections on a frequent basis. Tr. 130-155.

After Plaintiff moved from Texas to New Mexico, she received treatment from Casa De

Buena Salud Inc., Dr. Peter Bailey, the Community Health Center, Eastern New Mexico Medical Center and Dr. Thomas Ramage. The records indicate treatment from October 14, 1999 to January of 2000. She was treated for a sinus infection. She was also diagnosed with fibromyalgia with trigger points all over, migraine headaches, depression and chronic sinusitis. Tr. 184. During this time, Plaintiff continued on Prozac, 40 mg.

Plaintiff underwent a consultative psychiatric evaluation on July 15, 1999 by Dr. Robert L. Karp. He found that she had a major depressive disorder, mild, chronic, non psychotic, single episode and that her obsessive compulsive traits were mild. Tr. 170. He found her global assessment functioning scale was 60 ("moderate symptoms with flat affect, sad mood, suicidal thoughts, crying spells, etc."). *Id*.

## IV. DISCUSSION

Plaintiff asserts that the substantial evidence does not support the ALJ's decision. Plaintiff contends that the ALJ improperly characterized Plaintiff's mental impairment; the ALJ improperly discredited her complaints of fatigue; and the ALJ improperly relied on the testimony of the vocational expert.

Plaintiff contends that the ALJ improperly characterized Plaintiff's mental impairment in stating that Plaintiff's "depressive symptoms were situational to her prior living conditions and are not a significant problem at this time." This statement is supported by the medical evidence in the record. During the relevant time, Dr. Termini, Plaintiff's treating physician, found that the Plaintiff's's depression was "only a minor issue right now." Tr. 258. In November of 1998, Dr. Termini found that plaintiff was depressed, "part of which may be situational." Tr. 258. Dr. Karp found that Plaintiff's depressive disorder was "mild, chronic, nonpsychotic single episode." Tr. 170.

5

The ALJ did not err.

Plaintiff contends that the ALJ improperly discredited her complaints of fatigue, including the need to lie down for fifteen minutes each morning and afternoon. The ALJ properly discounted the Plaintiff subjective complaints because of the lack of objective evidence which corroborates Plaintiff's complaints. *See Diaz v. Secretary of HHS*, 898 F.2d 774, 777 (10th Cir. 1990). The ALJ properly noted that Plaintiff had no significant connective tissue disease symptoms in August of 1998 and continued to work ten hours per day even when her fibromyalgia was active. Tr. 15 and 165. Thus, the ALJ properly linked his findings to the evidence. *Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir. 1988). Again, the ALJ did not err.

At step five, the ALJ relied on the testimony of a vocational expert. He specifically stated in his decision that "[v]ocational expert testimony supports a finding that other work exists in significant numbers in the regional and national economies that [the Plaintiff] is capable of performing." Tr. 19. A vocational expert's testimony can provide substantial evidence to support the ALJ's findings only if the hypothetical questions presented to the vocational expert adequately reflects the state of the record. Gay v. Sullivan, 986 F.2d 1336, 1341 (10th Cir. 1993). In a somewhat convoluted and lengthy series of hypothetical questions, the ALJ established: 1) that the Plaintiff could not return to her past relevant work and had no transferable skills for "approximately 2500 jobs, requiring sedentary, light and medium exertion, which do not require skills or previous work experience"[1] Tr. 442;  2) that the Plaintiff could work in a room with a few co-workers  Tr. 444; 3) that Plaintiff could perform jobs of the type identified by the ALJ even if you "reduce the lift and carry to a 10 pound limitation" Tr. 444; and 4) that the Plaintiff could perform these jobs with an additional

---

[1] Tr. 439.

limitation of required positional changes every 15 to 20 minutes, Tr. 445.  However, at this point in the questioning the ALJ departs from the appropriate hypothetical question format and asks the vocational expert how much missed time from work per month a typical employee would tolerate. The ALJ made no reference to the medical records regarding Plaintiff's ability to attend work on a regular basis, nor did the ALj ask the vocational expert to make any assumptions regarding Plaintiff's ability to attend work on a regular basis.  The ALJ also asked the following series of questions:

Q    ...in so far as these jobs, even though you indicated, these are unskilled and routine repetitive work, you still would have to maintain, I would assume, attention, concentration, and pace, am I correct?

    A.    Yes.

    Q    In other words, stay on task—

    A.    Right.

    Q.    Even though it's simply doing a very simple task —

    A.    Yes.

    Q.    If she could not maintain that, that would not be compatible with work either?

    A.    No, if she couldn't—

    Q.    Okay.

    A.    Keep up with the production.

Tr. 446-47.

The questions posed by the ALJ only partially reflect the state of the record and are not in the appropriate format.  The record contains two Psychiatric Review Technique forms ("PRT form"). Tr. 20 and 171.  These are standard documents that tracks the listing requirements and evaluate the

Plaintiff under Part A and B criteria. In this case, the ALJ and a medical advisor completed the PRT forms. On both PRT forms, it was noted the Plaintiff "often" had "deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner."[2] Tr. 26 and 178.

The questions asked by the ALJ in these areas were not appropriate because they did not accurately reflect the state of the record and were not hypothetical. Hypothetical questions must reflect with precision all of the Plaintiff's impairments that are substantially supported by the record. *See Taylor v. Chater*, 118 F.3d 1274, 1278-79 (8th Cir. 1997); *Decker v. Chater*, 86 F.3d 953, 955 (10th Cir. 1996). The ALJ's failure to ask hypothetical questions which included any specific limitation with respect to the Plaintiff's ability to attend work on a regular basis and the limitation that the Plaintiff "often" shows "Deficiencies of Concentration, Persistence or Pace Resulting in Failure to Complete Tasks in a Timely Manner (in work setting or elsewhere)" requires a remand. *Cruse v. Department of Health & Human Services*, 49 F.3d 614 (10th Cir. 1995).

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Reverse or Remand Administrative Agency Procedure is granted and this matter is remanded for further proceedings consistent with this opinion.

                                                      **ALAN C. TORGERSON**
                                                      **UNITED STATES MAGISTRATE JUDGE**

---

[2] "*Concentration, persistence or pace* refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate complete of tasks commonly found in work settings." 20 C.F.R. Pt, 202, Subpt. P, App. 1 §12.00.